FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ MAY 3 0 2017 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
CHAN CHEESEBORO,

                    Plaintiff,

            - against -

LITTLE RICHIE BUS SERVICE, INC.,
JOSEPH RISITENEAU, BUS DRIVER, and
"JOHN COE" MOTOR VEHICLE DRIVER,

                    Defendants.
------------------------------------------------------------X

MEMORANDUM & ORDER

12-cv-1792 (SLT) (PK)

**TOWNES, United States District Judge,**

Plaintiff Chan Cheeseboro ("Plaintiff") brings this negligence suit for injuries she sustained in a motor vehicle accident while riding in a school bus operated by Defendant Little Richie Bus Service, Inc. ("Defendant")[1]. Before the Court are Defendant's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56, and Plaintiff's cross motion *in limine* to exclude the report and testimony of Defendant's psychological expert. Because the undisputed facts establish without question that Defendant violated no duty owed to Plaintiff, and because the Defendant is in any event immune under state law to Plaintiff's claim, Defendant's motion for summary judgment (Doc. 50), is **GRANTED**, Plaintiff's motion *in limine* (Doc. 53) is **DENIED**, and the case is hereby **DISMISSED**.

## I.    BACKGROUND

### A. Facts

The following facts are undisputed unless otherwise noted. On or about November 15, 2000, Joseph Risiteneau was operating a school bus owned by Defendant. The school bus was

---

[1] Joseph Risiteneau, the driver of the bus, has been dismissed from the suit. (Doc. 57.) "John Coe," the driver of the other vehicle involved in the accident, was never served.

equipped with seat belts. Defendant's employee, Subrattran Corchado, was riding on the bus in her capacity as a "bus matron". Ms. Corchado testified that, when picking up a child on route, she will routinely "get out of the bus and the kid will come in, I walk after the kid, take them to the seat, make sure they put the seat belt on, some cannot do it, I have to do it for them." (Deposition of Subrattran Corchado ("Corchado Dep."), Feb. 12, 2014, Doc. 50, Ex. H, 10:14-18.) At approximately 7:30 a.m. on November 15, 2000, Mr. Risiteneau picked up Plaintiff in front of her home. Plaintiff was eight years old at the time.

At approximately 8:00 a.m., while the school bus was travelling northbound in the service lane of Woodhaven Boulevard, a vehicle attempted to enter the service lane of Woodhaven Boulevard from the main lanes at 101st Avenue, causing an accident with the school bus. The parties dispute whether or not Plaintiff was wearing a seat belt at the time of the accident. Plaintiff asserts that as a result of the collision, she "was thrown around in [her] seat, and was thrown out of the seat iinto [sic] the aisle, injuring [her] neck and back." (Pl.'s Mem. of L. in Opp'n to Def.'s Mot. For Summary Judgment, Doc. 51, Exhibit 2, ¶ 5.) She further asserts that she "could not have been thrown out of [the] seat into the aisle if [she] had been wearing a seat belt that was properly fastened." (*Id.* at ¶ 6.) Ms. Corchado testified that following the accident she unbuckled the children's seatbelts and escorted them to Jamaica Hospital on another bus. (Corchado Dep., Feb. 12, 2014, Doc. 50, Ex. H, 16:10-17:7.)

Plaintiff was evaluated at both Jamaica Hospital and Peninsula Hospital on the date of the accident, and was released. Plaintiff was in pain and missed school for a few days, but sought no further medical treatment until more than a year later after she moved to North Carolina. (Pl.'s Resp. to Discovery Demands by Defs. Little Richie Bus Service, Inc. And Joseph Risiteneau, Bus Driver ("Pl.'s Resp. to Defs.' Interrogatories"); Doc. 50, Ex. C, ¶ 6; Deposition of Chan

2

Cheeseboro ("Cheeseboro Dep."); Nov. 11, 2013, Doc. 50, Exhibit D, 41:8-16; 42:3-15.)

Plaintiff alleges that as a result of the accident she "sustained an injury to her spine which has resulted in scoliosis," a permanent condition. (Pl.'s Resp. to Defs.' Interrogatories, ¶ 17.) She also alleges that she suffers from a potentially permanent post-traumatic stress disorder. (*Id.*)

The record contains medical records from Jamaica Hospital on the date of the accident and from various medical services providers in North Carolina. The parties have also submitted the following expert reports: Plaintiff's Expert Disclosure of orthopedist Dr. Michael Roback, M.D., Defendant's Expert Disclosure of orthopedist Dr. Edward Crane, M.D., Defendant's Expert Disclosure of psychologist Dr. David Masur, Ph.D., and Plaintiff's Expert Report of Dr. Stephen S. Teich, M.D.. None of the reports are in affidavit form.[2]

### B. Defendant's Motion for Summary Judgment

Plaintiff's Complaint asserts negligence as her sole cause of action, but both her legal and factual theories have apparently shifted during the course of discovery. Initially, Plaintiff alleged in her Complaint that Defendant was negligent for failing to equip the school bus transporting Plaintiff with seat belts. (*See* Amended Complaint ("Am. Compl."), Aug. 1, 2012, Doc. 4 at ¶ 12("As a result of the negligence of LITTLE RICHIE BUS SERVICE, INC. in failing to equip the bus in которой Plaintiff was traveling with seat belts, [Plaintiff's] injuries were much more severe than they otherwise would have been.")) Likewise, and in response to Defendant's

---

[2] The Report of Dr. Masur was subsequently incorporated by reference into an affirmation pursuant to New York Civil Practice Law and Rules ("CPLR") Section 2106 submitted by Defendant in opposition to Plaintiff's motion to exclude Dr. Masur's report and testimony. (Mem. of L. in Opp'n to Pl.'s Mot *in Limine* to Preclude Dr. Masur From Testifying, Doc. 54, Ex. 2.) CPLR § 2106 permits physicians, osteopaths, or dentists to file an affirmation in New York State court with the same force and effect as an affidavit; psychologists are not covered by this section. *Pascucci v Wilke*, 60 A.D.3d 486, 486 (1st Dept. 2009). More fundamentally, Defendant's submissions are insufficient because "New York state procedural rules do not apply here to a federal court sitting in diversity." *Allianz Ins. Co. v Lerner*, 416 F3d 109, 118 (2d Cir 2005).

3

discovery demands, Plaintiff reiterated her position that "the defendant['s] negligence consisted of failing to equip the passenger seats with seat belts." (Pl.'s Resp. to Defs.' Interrogatories, ¶ 12.) After discovery disclosed that Defendant's bus was in fact equipped with seatbelts and Defendant moved for summary judgment on those grounds, Plaintiff asserted a new theory of negligence in opposing that motion: that Defendant was negligent because Ms. Corchado, the bus matron, should have ensured that Plaintiff was belted at the time of the accident. (Pl.'s Mem. of L. in Opp'n to Def.'s Mot. For Summary Judgment, Doc. 51, at 7-10).

Although the parties also dispute whether Plaintiff sustained a "serious injury" and therefore satisfied threshold damages requirements imposed under New York Insurance Law Section 5102(d), (*see, e.g.*, *id.* at 2-6), the Court only addresses the negligence issue because, even while assuming the presence of a genuine issue of material fact as to whether Plaintiff's injury was "serious," Defendant is not liable as a matter of law under the doctrines of duty and immunity for reasons explained below. The Court nevertheless notes that the parties' filings on whether Plaintiff sustained a "serious injury" are deficient. When a defendant moves for summary judgment for lack of "serious injury," as Defendants have done here, the Second Circuit has set forth a burden-shifting scheme that requires defendants to provide evidence in the form of sworn affidavits from its own physicians, and also requires a plaintiff to produce the same in response. *See Yong Qin Luo v Mikel*, 625 F3d 772, 776 (2d Cir. 2010). The parties here have not provided the appropriate affidavits to permit the Court to conduct this analysis. *See*, *supra*, n. 2.

## II. ANALYSIS

### A. Standard of Review

Summary judgment is appropriate only when "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *Celotex Corp. v. Carett*, 477 U.S. 317, 322 (1986); *see also Beyer v. County of Nassau*, 524 F.3d 160, 163 (2d Cir. 2008). The moving party bears the burden of showing that there is no genuine issue of fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). If the movant meets this burden, the non-movant must set out specific facts showing a genuine issue for trial. *Parks Real Estate Purchasing Group v. St. Paul Fire and Marine Ins.*, 472 F.3d 33, 41 (2d Cir. 2006). The non-movant cannot avoid summary judgment "through mere speculation or conjecture" or "by vaguely asserting the existence of some unspecified disputed material facts." *Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir. 1990) (internal quotations and citations omitted). Moreover, "[t]he 'mere existence of a scintilla of evidence' supporting the nonmovant's case is also insufficient to defeat summary judgment." *Nigara Mohawk Power Corp. v. Jones Chemical, Inc.*, 315 F.3d 171, 175 (2d Cir. 2003) (quoting *Anderson*, 477 U.S. at 252). Where the party opposing summary judgment bears the burden of proof at trial, summary judgment should be granted if the moving party can "point to an absence of evidence to support an essential element of the nonmoving party's claim." *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995).

### B. Negligence

As noted above, Plaintiff alleged in her Complaint and repeated in her responses to Defendant's interrogatories that Defendant was negligent for failing to equip the school bus with seat belts. (Am. Compl., Aug. 1, 2012, Doc. 4; Pl.'s Resp. to Defs.' Interrogatories, ¶ 12.) Plaintiff abandoned that theory in briefs and, for the first time in her opposition to Defendant's

motion for summary judgment, asserts a new theory of negligence—that Defendant is liable for Ms. Corchado's failure to ensure Plaintiff was properly belted at the time of the accident. As a preliminary matter, this new argument need not be considered. *Lyman v. CSX Transp., Inc.*, 364 F. App'x 699, 700 (2d Cir. 2010) (summary order) (district court did not abuse discretion by refusing to consider plaintiff's new theories of negligence raised in opposition to summary judgment) (citing *Greenidge v. Allstate Ins. Co.*, 446 F.3d 356, 361 (2d Cir. 2006)). Nevertheless, this new theory fails as a matter of law because Ms. Corchado had no clear duty to ensure Plaintiff was belted at the time of the collision.

"Under New York law, the elements of a negligence claim are: (i) a duty owed to the plaintiff by the defendant; (ii) breach of that duty; and (iii) injury substantially caused by that breach." *Lombard v. Booz–Allen & Hamilton, Inc.*, 280 F.3d 209, 215 (2d Cir. 2002); *see Solomon v. City of New York*, 66 N.Y.2d 1026, 1027 (1985) (citation omitted). The first element is integral to any claim: "a duty of reasonable care owed by a tortfeasor to an injured party is elemental to any recovery in negligence." *Palka v. Servicemaster Mgt. Services Corp.*, 83 N.Y.2d 579, 584 (1994) (citations omitted). "[T]he definition of the existence and scope of an alleged tortfeasor's duty is usually a legal, policy-laden declaration reserved for Judges to make prior to submitting anything to fact-finding or jury consideration." *Id.* To set a duty, Courts will balance logic, science, and socioeconomic policies. *De Angelis v Lutheran Med. Ctr.*, 58 N.Y.2d 1053, 1055 (1983). Courts must also keep in mind during the analysis that the legal consequences of wrongs and exposure to liability must be limited to a "controllable degree." *McCarthy v Olin Corp.*, 119 F.3d 148, 157 (2d Cir. 1997); *Waters v New York City Hous. Auth.*, 69 N.Y.2d 225, 229 (1987).

### C. School Bus Matron's Duty to Ensure a Student is Belted

1. Defendant Did Not Breach its Duty of Reasonable Care

One way a duty may arise is pursuant to state statute. Under New York Law, violation of a statute will constitute negligence *per se* where the statute imposes a specific duty. *Elliott v City of New York*, 95 N.Y.2d 730, 734 (2001). Violation of a regulation or administrative rule is evidence of negligence, but not dispositive. *Id.* Plaintiff relies on these principles to argue that specific New York statutes and regulations imposed a duty on Ms. Corchado to ensure Plaintiff was belted at the time of the accident. However, the statutes and regulations of New York in place at the time of the accident—including relevant New York City regulations and Code provisions—have no such effect.

While at the time of the accident New York Vehicle and Traffic Law forbade operation of a "motor vehicle" unless all back seat passengers under the age of ten were appropriately belted, school buses were explicitly exempted from this restriction. N.Y.Veh. & Traffic L. § 1229-c(1), (4) (McKinney, 1996) ("'motor vehicle'. . . shall not include those vehicles which are used as school buses"). Except for children under the age of four, who were required to be restrained in appropriate devices, *Id.* at ¶ 11, there was at the time, and still is today, no law requiring student passengers in school buses to be belted while riding.

New York law in place at the time of the accident did, on the other hand, require all school buses to have seat belts. N.Y. Veh. & Traf. § 383 (5) (McKinney, 1990). Whether carriers transporting students on school buses were obligated to require use of those seat belts, however, was left to the discretion of individual boards of education or school district board of trustees. *See* N.Y. Educ. Law 3635-a ("A board of education or board of trustees may, in its

discretion, [adopt a] resolution . . . to provide for the use of seat safety belts on such school buses . . . .))

No relevant educational board imposes an obligation commensurate with the duty Plaintiff invokes here. Rather, the Regulation of the Chancellor of the New York City Board of Education holds schools responsible for teaching special education students rules of riding the school bus, including the rule to "[k]eep seat belt on until the bus comes to a halt at the school or home." N.Y.C. Board. Of Educ., Regulation of the Chancellor A-801, §2.II.B.2.g.[3] However, that provision also places responsibility on parents to advise their children to obey the rule that "[a]ll children must be seated on the bus at all times, with a seat belt fastened." *Id.* at §2.III.D.1. Moreover, the regulations specifically list the responsibilities of bus drivers and escorts, none of which involve the monitoring of seat belt use. The responsibilities include only the following provisions: 1) "The driver and escort are responsible for monitoring pupil behavior on the bus"; 2) "The escort will be responsible for administration of first aid in emergency situations"; 3) "The escort is required to assist the child from the bus to the front door of the school"; and 4) "If the child is not met by the parent or otherwise authorized person on the return trip from school, the driver will notify the garage dispatcher and take the child to the police station. If a parent has signed a waiver so stating, the driver or escort may wait until the child has entered his or her home." *Id.* at § 2.IV. A-D.

Notably, Title 19 of the New York City Administrative Code, Chapter 6, § 19—603 reads as follows:

> a. All buses and other motor vehicles transporting handicapped children to and from school in the city shall be staffed, in addition to the driver thereof, with an escort. **It shall be the duty and responsibility of such escort to generally supervise and aid the handicapped children riding such bus; to require each**

---

[3] Available at http://docs.nycenet.edu/docushare/dsweb/Get/Document-39/A-801.pdf (last visited on Dec. 26, 2016).

8

> **child to utilize a seat belt or other safety device and to escort the children on and off each bus to an area of safety.** b. The driver of a bus transporting children to and from school in the city shall not proceed after having halted such bus to take on or discharge a passenger until he or she has received assurance from the escort that the children are seated, have fastened the safety belt on the seat and that it is otherwise safe to proceed.

N.Y.C. Admin. Code § 19—603(a) (1985) (emphasis added). Thus, subsection (a) of this provision imposes a clear duty on school bus matrons (referred to as escorts in the Code) to generally supervise and help "handicapped children"[4] passengers and to "require" them to use a seat belt. Subsection (b) implies matrons should check students' seat belts at every stop in order to be able to assure the driver that it is safe to proceed, but stops short of imposing a "clear duty" on the matron, since the object of the subsection's imperative is the driver. Generally, "a violation of the [New York City] Code may be considered as some evidence of negligence," *White v. Jeffco W. Properties, Inc.*, 304 A.D.2d 824, 825 (2nd Dept. 2003). But where a provision of the New York Administrative Code has its origins in State law, it may be entitled to statutory treatment. *Yenem Corp. v. 281 Broadway Holdings*, 18 N.Y.3d 481, 489 (2012).

Nevertheless, Plaintiff cannot raise a genuine issue of material fact as to whether Defendant violated this code provision. Ms. Corchado testified that when picking up a student, she will "get out of the bus and the kid will come in, I walk after the kid, take them to the seat, make sure they put the seat belt on, some cannot do it, I have to do it for them." (Corchado Dep., Feb. 12, 2014, Doc. 50, Ex. H, 10:14-18.) Ms. Corchado's testimony of her routine practice essentially tracks the duty imposed by New York Admin. Code § 19-603 that requires a matron

---

[4] Plaintiff has asserted, and Defendant has not contradicted, that Plaintiff was "disabled" at the time of the accident for the purpose of relevant New York Vehicle and Traffic Laws, discussed below. (Pl.'s Mem. of L. in Opp'n to Def.'s Mot. For Summary Judgment, Doc. 51, 9.) The Court assumes this is true for the purpose of this motion. Although the parties do not address whether Plaintiff was "handicapped" within the meaning of the New York City Code, the Court will assume she was, since it does not affect the outcome of this analysis.

9

to escort handicapped children to their seat, and either supervise or assist them to put on their seat belts. Plaintiff, on the other hand, testified that she has no recollection of putting on a seat belt or seeing a seat belt on the day of the accident. (Cheeseboro Dep., Nov. 11, 2013, Doc. 50, Exhibit D, 24:13-18.) In the face of Ms. Corchado's clear testimony, Plaintiff's failure to remember cannot create an issue of fact sufficient to withstand summary judgment as to whether Ms. Corchado escorted Plaintiff to her seat and ensured Plaintiff was belted when she boarded the bus on the day of the accident. *Petrunti v. Cablevision*, No. 08-CV-2277 (JFB) (AKT), 2009 WL 5214495, at *11 (E.D.N.Y. Dec. 30, 2009) (where Defendant put forth testimony that Plaintiff violated company policy on a specific occasion, "Plaintiff's lack of recollection is insufficient [] to create a triable issue of fact."); *Droutman v. New York Blood Ctr.*, Inc., 03-CV-5384 (DRH) (ARL), 2005 WL 1796120, at *1 n. 2 (E.D.N.Y. July 27, 2005); *Lazar's Auto Sales, Inc. v. Chrysler Fin. Corp.*, 83 F.Supp.2d 384, 389 (S.D.N.Y.2000) ("[plaintiff's] failure of recollection does not suffice to raise an issue of fact in the face of [the defendant's] clear recollection.") Thus, there is no issue of material fact and Defendant did not violate the clear duty established by New York City Admin. Code § 19—603.

To summarize, the applicable New York State and City statutes and regulations impose no duty of care on bus operators or matrons to ensure students are belted at every moment they are being transported, which is essentially the standard of care Plaintiff proposes and which this Court would have to impose for Plaintiff to succeed on her claim. At most, the applicable statutes and regulations require a matron to escort disabled children to their seats and either supervise or aid the children to fasten their seatbelts. *See* N.Y.C. Admin. Code § 19—603(a) (1985). Accordingly, Plaintiff cannot prevail because she has provided no evidence that Corchado or any other of Defendant's agents breached this standard.

Common law, logic, and socioeconomic policy support and confine the limited scope of this duty. Although "a passenger has no independent legal duty to insure that a fellow passenger in the vehicle is restrained by a seat belt," a school bust matron is different from a fellow passenger. *Horan v. Brown*, 43 A.D.3d 608, 609 (3d Dept. 2007) (citing *Thurel v. Varghese*, 207 A.D.2d 220, 223 (2d Dept. 1995)). Thus, under common law, those transporting students on a school bus have a duty to take reasonable measures for the students' protection. *See Sindle v. New York City Tr. Auth.*, 33 N.Y.2d 293, 297 (1973). Indeed, a bus operator has responsibility for the welfare of the student passengers, such that it may even be said there is a special relation requiring the bus operator or its employees to anticipate dangers posed by third parties and to take reasonable precautionary measures. *See Pratt v Robinson*, 39 N.Y.2d 554, 560 (1976); Restatement (Second) of Torts § 315 (1965).

Where a bus is equipped with seat belts, logic and reason dictate that reasonable measures of a matron to protect the students include ensuring all students are belted at the time they board the bus. This may well require supervision of those students who can belt themselves, and assistance for those who cannot not attach the buckles on their own.

Reasonable measures would not include requiring the matron to ensure that each child is belted at every moment of the ride. Such a requirement would be wholly impractical for a number of reasons. First, while the matron is checking the belts of students at the back of the bus, students at the front of the bus could become unbelted. Second, requiring the matron to move about the bus and continually monitor each student while the bus is in motion would put the matron herself at risk of being injured. Third, requiring a matron to ensure that each child is belted at every moment of the ride would create resource problems for school districts. It would require the hiring of extra matrons for larger buses, and may increase ride times to accommodate

continuous belt checking. Fourth, such a duty would be inconsistent with New York's policy of limiting tort liability to a "controllable degree." *See McCarthy*, 119 F.3d at 157, *supra*. Imposing such a duty would open the door to a flood of suits based on failure to monitor seat belt use that the State has already sought to curtail by providing statutory immunity to bus operators and their employees for liability arising solely out of a child's failure to wear a seat belt on a school bus. New York Educ. Law § 3813(4). Thus, the Court declines to accept Plaintiff's proposed duty of care.

Normally, the Court would set the precise scope of the applicable duty of care, but such a determination is not necessary in this case. Plaintiff has failed to raise an issue of fact as to whether Defendant complied with the applicable statutes and regulations, including New York City Admin Code §19-603.

2. Defendant is Immune from Liability

Summary Judgment must also be entered in favor of Defendant because it is immune from liability for Plaintiff's negligence claim under state law. New York Education Law Section 3813(4) ("§ 3813(4)") provides as follows:

> **4. In any action for personal injuries by a passenger on a school bus against a school district, school bus operator under contract with a school district, or any agent or employee of a district or operator (including, but not limited to, bus drivers, matrons, teachers serving as chaperones and volunteers) no such person shall be held liable solely because the injured party was not wearing a seat safety belt**; provided, however, that nothing contained herein shall be construed to grant immunity from liability for failure to:
> (a) maintain in operating order any equipment required by statute, rule or regulation;
> (b) comply with applicable statutes, rules or regulations.

N.Y. Educ. Law § 3813(4) (McKinney, 2015)[5] (emphasis added). The plain language of § 3813(4) thus immunizes school bus operators (and their agents and employees, including bus

---

[5] The current version of N.Y. Educ. Law § 3813(4) has been in effect since 1996.

matrons) from personal injury claims brought by an injured student on the sole basis that the student was not wearing a seat belt. *See O'Connor v. Mahopac Cent. School Dist.*, 259 AD2d 530, 531 (2d Dept. 1999).

Nevertheless, Plaintiff argues that Defendant can be liable despite the immunity provided by § 3813(4) for bus operators and matrons because of the exception for failure to comply with applicable statutes, rules or regulations as provided by § 3813(4)(b). Specifically, Plaintiff argues Defendant was negligent for failing to comply with Title 8 of the New York Comprehensive Codes, Rules and Regulations, Section 156.3(g) ("8 N.Y.C.R.R. 156.3(g)"), which relates to the training of students on the proper use of seat belts, and New York Vehicle and Traffic Law Section 1229-d ("§ 1229-d"), which requires the Commissioner of Education to promulgate rules for the training of school bus matrons who have care of disabled children. This argument fails on a plain reading of the cited provisions because Defendant could not have violated either 8 N.Y.C.R.R. 156.3(g) or § 1229-d.

First, Defendant did not fail to comply with 8 N.Y.C.R.R. 156.3(g), which creates a duty for the school district to "insure that all pupils who are transported on any school bus owned, leased or contracted for by the district or board of cooperative educational services shall receive instruction on the use of seat safety belts."[6] This regulation does not impose any duty on school bus operators or on school bus matrons whatsoever; it creates a duty only for the school district, which is not a party to this litigation. Hence, Defendant could not, vicariously or otherwise, have "failed to comply" with this regulation.

Second, Defendant did not fail to comply with § 1229-d, the current version of which requires the commissioner of education to promulgate rules "requiring that every school bus

---

[6] In the version of 8 N.Y.C.R.R. 156.3 in effect at the time of the accident, this provision was at subsection (i). 8 N.Y.C.R.R. 156.3 (McKinney, 1997).

attendant serving pupils with a disabling condition receive school bus safety training and instruction relating to the special needs of such pupils," including "guidance on the proper techniques for assisting disabled students in entering and exiting the school bus," as well as training for health emergencies or other emergency situations. N.Y.Veh. & Traffic Law § 1229-d (McKinney, 2013). Plaintiff argues that Defendant never provided Ms. Corchado with the training mandated under this provision (promulgated at 8 N.Y.C.R.R. 156.3(c)(5)[7]), and thereby violated this provision. Even assuming the statute and corresponding regulation (neither of which make any reference to seat belts) covered training on seat belts, Plaintiff overlooks that the version of the statute in effect at the time of the accident did not have any provision for the training of school bus attendants whatsoever. N.Y.Veh. & Traffic Law § 1229-d (McKinney, 1985). Nor did the corresponding regulation which was then in effect. *See* 8 N.Y.C.R.R. 156.3 (McKinney, 1997) (attached as exhibit 1 to this Memorandum and Order). Thus, Defendant could not have "failed to comply" with the mandated training, which was not mandated at the time the accident occurred.

Because Defendant clearly did not "fail to comply" with either 8 N.Y.C.R.R. 156.3(g) or § 1229-d, Plaintiff's argument that Defendant is not entitled to the immunity provided by N.Y. Education Law § 3813(4) fails. Thus, not only did the New York statutes and regulations cited by Plaintiff not impose a clear duty on Ms. Corchado to ensure Plaintiff was properly belted at the time of the accident, New York law in fact immunized Defendant from liability for such a

---

[7] The training provisions require bus monitors and attendants to receive three hours of instruction including but not limited to "school bus safety practices, child management techniques, and the proper techniques for assisting children to safely embark and disembark a school bus." Those transporting students with a "disabling condition" must also receive instruction "including, but not limited to, the proper techniques for assisting disabled students in entering and exiting the school bus." Such training must have occurred by July 1, 2004 for monitors or attendants employed as of July 1, 2003. Monitors or attendants hired after July 1, 2003 must receive training before assuming their duties.

14

claim, and Plaintiff has failed to raise a triable issue of fact challenging Defendant's entitlement to that immunity. N.Y. Educ. Law § 3813(4). In short, the New York State statutes and regulations cited by Plaintiff support a finding that Defendant had no duty to ensure Plaintiff was belted at the time of the accident, and that Defendant is immune from liability.

### III. CONCLUSION

For the reasons explained above, Defendant is immune from liability. Therefore, Defendant's Motion for Summary Judgment (Doc. 50) is **GRANTED**, and Plaintiff's cross-motion *in limine* to preclude Defendant's expert (Doc. 53) is **DENIED** as moot. The Clerk of Court is respectfully requested to enter judgment accordingly and close this case.

**SO ORDERED**

/s/ *Sandra L. Townes*
SANDRA L. TOWNES
United States District Judge

Dated: May 30, 2017
Brooklyn, New York

15